ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

DEC - 2 2021

CLERK, U.S. DISTRICT COURT
By: _____
Deputy

UNITED STATES OF AMERICA

v.

No. 4:21-MJ-____

| RENE RODRIGUEZ | (01) |
| ALVIN TAYLOR | (02) |
| WILLIAM MCGLOTHLIN | (03) |
| JOSEPH EANES | (04) |

## CRIMINAL COMPLAINT

Conspiracy to Possess a Controlled Substance with Intent to Distribute
(Violation of 21 U.S.C. § 846)

Beginning in or before October 2020 and continuing until in and around May 2021, in the Fort Worth Division of the Northern District of Texas, and elsewhere, defendants **Rene Rodriguez, Alvin Taylor, William McGlothlin,** and **Joseph Eanes**, along with others known and unknown, did knowingly and intentionally combine, conspire, confederate, and agree to engage in conduct in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A), namely to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a schedule II controlled substance.

In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the defendants or conspirators, both charged and uncharged, committed, among others, the following overt acts in the Northern District of Texas and elsewhere:

On or about October 30, 2020, **Rene Rodriguez** possessed two ounces of methamphetamine.

On or about November 13, 2020, **Rene Rodriguez** possessed four ounces of methamphetamine.

On or about February 24, 2021, **William McGlothlin** gave approximately eight ounces of methamphetamine to **Rene Rodriguez** who subsequently sold the methamphetamine to an FBI CHS.

On or about March 18, 2021, **William McGlothlin** gave approximately eighteen ounces of methamphetamine to **Rene Rodriguez** who subsequently sold the methamphetamine to an FBI CHS.

On or about April 29, 2021, **Alvin Taylor** gave approximately one kilogram of methamphetamine to **Rene Rodriguez** who subsequently sold the methamphetamine to an FBI CHS.

On or about May 20, 2021, **William McGlothlin** communicated by cellular telephone with an FBI CHS about the sale of methamphetamine.

On or about May 20, 20201, **William McGlothlin** said he sold methamphetamine at $3,800 for one-half kilogram and at $7,200 for one kilogram.

On or about May 26, 2021, **William McGlothlin** met in-person with an FBI CHS to sell methamphetamine to the FBI CHS.

On or about May 26, 2021, **McGlothlin** said he did not have the methamphetamine with him, but that another person (later identified as **Joseph Eanes**) had the methamphetamine.

On or about May 26, 2021, McGlothlin gave the FBI CHS **Joseph Eanes's** cellular telephone number and told the CHS to contact **Eanes** to complete the methamphetamine deal.

On or about May 26, 2021, **Joseph Eanes** communicated by cellular telephone with **William McGlothlin**.

On or about May 26, 2021, **Joseph Eanes** communicated by cellular telephone with an FBI CHS and instructed the CHS to travel to a specific location to complete the drug deal.

On or about May 26, 2021, **Joseph Eanes** met with the FBI CHS to complete the drug deal.

All in violation of 21 U.S.C. § 846 (21 U.S.C. §§ 841(a)(1) & (b)(1)(A)).

I, the undersigned Complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

## I. INTRODUCTION

1. I have been a Special Agent of the Federal Bureau of Investigation (FBI) for three years and am currently assigned to the Dallas Field Division's Fort Worth Resident Agency on a Criminal Enterprise Squad working with a Violent Crime/Gang Task Force (hereinafter referred to as the Task Force). The Task Force is comprised of agents, investigators and police officers from the FBI, the Arlington, Texas Police Department (APD), Texas Department of Public Safety (DPS), and the Fort Worth, Texas Police Department (FWPD). As a Special Agent, I am charged with the duties of investigating violations of the criminal laws of the United States, including investigating violations of 21 U.S.C. § 846.

2. I have participated as a law enforcement officer in investigations of unlawful narcotics distribution and have conducted Title III wiretap investigations, physical and electronic surveillances, undercover transactions, the execution of search and arrest warrants, debriefings of informants, and review of taped conversations and drug records. Through my training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored and distributed, and the methods of payments for such drugs. I am also familiar with some of the methods by which narcotics traffickers communicate and code words commonly used by narcotics traffickers.

I have participated as a law enforcement officer in investigations of money laundering. Through my training, education and experience, I have become familiar with the manners in which individuals promote or conduct specified unlawful activities and conceal or disguise the nature, source, ownership, and control of proceeds of specified unlawful activities.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for a criminal complaint and does not set forth all of my knowledge about this matter. All calls referenced in the complaint are summaries of the intercepted call and are not intended to be a verbatim translation of the call.

4. This affidavit is submitted in support of a criminal complaint against **Rene Rodriguez, Alvin Taylor, William McGlothlin,** and **Joseph Eanes** for a violation of 21 U.S.C. § 846, Conspiracy to Possess with Intent to Distribute and Distribute a Schedule II Controlled Substance, namely methamphetamine.

## II. SUMMARY OF PROBABLE CAUSE THAT A VIOLATION OF 21 U.S.C. § 846 HAS OCCURRED

5. Since approximately October 2020, the government has been investigating allegations that **Rene Rodriguez, Alvin Taylor, William McGlothlin, Joseph Eanes** and others have conspired together to possess methamphetamine, with the intent to distribute it in the Dallas/Fort Worth area.

6. As part of the conspiracy, **Rene Rodriguez, Alvin Taylor, William McGlothlin, Joseph Eanes** and others agreed to possess methamphetamine, with the intent to distribute it, and knowingly and willfully participated in that agreement.

7. As part of the conspiracy, the common purpose between and among **Rene Rodriguez, Alvin Taylor, William McGlothlin, Joseph Eanes** and others was to possess and distribute methamphetamine in the Dallas/Fort Worth area and elsewhere.

8. As part of the conspiracy, not every person named or identified in the conspiracy knew every other person identified as being in the conspiracy. It was their joining together for the common purpose of possessing and distributing methamphetamine, the nature of the scheme to possess and distribute methamphetamine, and the overlapping among its members in possessing and distributing methamphetamine that established their membership in this particular conspiracy. And not every member of the conspiracy knew the details of each aspect of the conspiracy. Nevertheless, each member of the conspiracy knew or was aware of the conspiracy's general purpose and scope, which was to possess and distribute methamphetamine in the Dallas/Fort Worth area, between and among **Rene Rodriguez, Alvin Taylor, William McGlothlin, Joseph Eanes** and others.

9. As part of the conspiracy, its members routinely received and delivered multiple grams to kilogram quantities of methamphetamine in the Dallas/Fort Worth area.

10. As part of the conspiracy, some of the money derived from the sale and distribution of methamphetamine would be used to purchase additional quantities of methamphetamine.

### III. FACTS ESTABLISHING PROBABLE CAUSE THAT A VIOLATION OF 21 U.S.C. § 846 HAS OCCURRED

11. FBI investigators are currently investigating several members of the Rene Rodriguez Drug Trafficking Organization (RRDTO) and their associates who are involved in the trafficking and distribution of methamphetamine (Ice), heroin, and cocaine in the Fort Worth, Texas area and elsewhere.

12. In September 2020, Federal Bureau of Investigation (FBI) Special Agents and Task Force Officers (TFO) received information from a Confidential Human Source (CHS) that Rene Rodriguez sold multi-ounce quantities of methamphetamine. CHS indicated Rodriguez also had access to pound quantities of methamphetamine through an unidentified source.

13. The CHS was able to provide an active phone number XXX-XXX-0887, utilized by **Rodriguez**.

14. On October 30, 2020, CHS conducted a controlled buy of approximately 2 ounces of methamphetamine from **Rodriguez** for $825.00. The purchase occurred at **Rodriguez's** residence located at XXXX Wilbarger Street, Fort Worth, TX. Drug Enforcement Agency (DEA) laboratory report indicated the seized substance was 100% pure methamphetamine weighing 55.51 grams.

15. On November 13, 2020, CHS conducted a controlled buy of approximately 4 ounces of methamphetamine from **Rodriguez** for $1,400.00. The purchase occurred at **Rodriguez's** residence located at XXXX Wilbarger Street, Fort Worth, Texas.

Drug Enforcement Agency (DEA) laboratory report indicated the seized substance was 99% pure methamphetamine weighing 110.904 grams.

16. Through court ordered phone analysis, SA'S determined that **Alvin Taylor,** using phone number XXX-XXX-6233, had been in phone contact with **Rodriguez,** using phone number XXX-XXX-0887, just prior to the drug transaction between the CHS and **Rodriguez** on November 13, 2020. FBI Surveillance also observed an individual fitting **Taylor's** description on the same date at **Rodriguez's** home.

17. On January 5, 2021, Texas Department of Public Safety SA Ronnie Hubbell and other SA'S conducted surveillance on **Taylor**. **Taylor** was operating a gray Nissan Altima bearing Texas license plate HXK6468. An open source database search revealed that the gray Altima is registered to **Taylor**. Investigators observed **Taylor** meet with an unknown individual at the Quick Trip convenience store located at 6549 Wichita Street, Fort Worth, Texas 76119. SA Hubbell observed a hand-to-hand transaction between the unidentified party and **Taylor.** SA Hubbell followed the unidentified party to a separate private residence. SA Hubbell identified the unidentified party as W.J. SA Hubbell conducted a post-Miranda interview of W.J. who admitted to SA Hubbell that he had purchased approximately 2 grams of methamphetamine from **Taylor** for $60.00 at the Quick Trip store, but that he had already flushed the drugs. W.J. showed SA Hubbell his mobile phone where he had negotiated the methamphetamine deal with **Taylor** in text messages. W.J. had **Taylor's** phone number, XXX-XXX-6233 saved as "Al".

18. Prior to February 24, 2021, a CHS contacted **Rodriguez** about a potential purchase of eight ounces of methamphetamine. **Rodriguez** agreed to sell the CHS eight ounces of methamphetamine for $2,000.00

19. On February 24, 2021, CHS contacted **Rodriguez** to discuss purchasing eight ounces of methamphetamine. The controlled purchase took place at **Rodriguez's** residence. While at the residence, **Rodriguez** called an unknown male to get the eight ounces of methamphetamine.

20. The unknown male (later identified by CHS on March 30, 2021 as **William McGlothlin**) said he had the drugs and would come to **Rodriguez's** residence soon. At 3:03 p.m., a dark green Pontiac, bearing temporary Texas license plates MHB2493, driven by **McGlothlin** arrived at XXXX Wilbarger Street, Fort Worth, Texas. **Rodriguez** and **McGlothlin** went into a separate room. Shortly thereafter, **Rodriguez** came out and handed the CHS eight ounces of methamphetamine.

21. SA Kecev and TFO Hubbell were able to hear **Rodriguez's** voice and see his image on the electronic surveillance. At a pre-determined meet location, CHS provided to SA Kecev two clear plastic Ziplock baggies containing a white crystalline substance. A field test of the substance conducted by FBI Special Agent Tim Smylie indicated a positive presence of methamphetamine. Drug Enforcement Agency (DEA) laboratory report indicated the seized substance was 100% pure methamphetamine weighing 220.76 grams.

22. Prior to March 18, 2021, CHS contacted **Rodriguez** about a potential purchase of one kilogram of methamphetamine. **Rodriguez** agreed to sell to CHS one kilogram of methamphetamine for $7,500.00.

23. On March 18, 2021 2021, CHS contacted **Rodriguez** to discuss purchasing one kilogram of methamphetamine. Agents utilized electronic surveillance to monitor the meeting between the CHS and **Rodriguez**. CHS met with **Rodriguez** at his residence multiple times throughout the day.

24. Pen Register data collected from **Rodriguez's** cell phone on March 18, 2021, showed **Rodriguez** was calling XXX-XXX-8356, known to be used by **McGlothlin**.

25. At around 5:28 p.m., CHS arrived at XXXX Wilbarger Street, Fort Worth, Texas. After a short period of time, CHS handed to **Rodriguez** $7,500.00.

26. At approximately, 7:23 p.m., a purple 1973 Ford LTD 2, bearing Texas license plates B12150M, operated by a white male later identified as **McGlothlin**, arrived at XXXX Wilbarger Street, Fort Worth, Texas. Shortly after the Fort LTD 2 arrived, **Rodriguez** gave approximately 18 ounces of methamphetamine to the CHS.

27. At around 7:33 p.m., CHS departed XXXX Wilbarger Street, Fort Worth, Texas and met SA Kecev and TFO Hubbell at the meet location. CHS successfully completed a controlled purchase of 18 ounces of Ice from **Rodriguez**, supplied by **McGlothlin**. A field test of the substance conducted by FBI Special Agent Tim Smylie indicated a positive presence of methamphetamine. Drug Enforcement Agency (DEA) laboratory report indicated the seized substance was 99% pure methamphetamine weighing 491 grams.

28. During the debrief of the CHS on March 30, 2021, he was provided with a photo of **McGlothlin**. CHS positively identified **McGlothlin** as the supplier of the methamphetamine on the February 24, 2021 and March 18, 2021 controlled purchases.

29. Open source database research revealed **McGlothlin** was possibly residing at the Stonegate apartment complex, located at XXXX Oak Hill Circle, Fort Worth, Texas. Physical surveillance of the apartment complex spotted the green Pontiac, bearing Texas license plates MHB2493 parked near building 31. The green Pontiac was the vehicle operated by **McGlothlin** during the February 24, 2021 controlled purchase of eight ounces of methamphetamine.

30. The purple Ford LTD2, bearing Texas license plates B12150M was also parked near building 31 of the apartment complex. The purple Ford was operated by **McGlothlin** during the March 18, 2021 controlled purchase of 18 ounces of methamphetamine.

31. On April 29, 2021, CHS conducted a controlled buy of approximately 1 kilogram of methamphetamine from **Rodriguez** for $7,200.00. The purchase occurred at **Rodriguez's** residence located at XXXX Wilbarger Street, Fort Worth, TX. FBI surveillance observed an individual arrive at the transaction location who fit the description of **Taylor**. Review of electronic surveillance revealed that the methamphetamine had been delivered to **Rodriguez** by **Taylor.**

32. Pen register data showed that at around 9:18 a.m., **Rodriguez** called XXX-XXX-6233, known to be utilized by **Taylor**.

33. At 9:39 a.m., pole camera surveillance observed a black Lincoln, four door sedan, bearing Texas license plates MWP0373, arrive at XXXX Misty Meadow Drive, Fort Worth, Texas, an address known to be used by **Taylor**. Taylor placed a black bag in the trunk of the black Lincoln. An open source database search revealed the vehicle was registered to **Taylor**.

34. At around 10:22 a.m., the black Lincoln, bearing Texas license plates MWP0373, operated by **Taylor**, arrived at XXXX Wilbarger Street, Fort Worth, Texas. **Rodriguez** exited the house and walked to the black Lincoln. **Rodriguez** retrieved a bag from the vehicle and then went back inside his residence. **Taylor** departed the residence.

35. CHS arrived at **Rodriguez's** residence at approximately 10:34 am. At around 10:40 a.m. physical surveillance observed the black Lincoln vehicle operated by **Taylor** was parked near XXXX Killian Street Fort Worth, Texas, approximately .2 miles northeast from **Rodriguez's** residence. **Taylor** remained in the vehicle.

36. CHS departed **Rodriguez's** home at 10:48 a.m. Physical surveillance observed **Taylor** return to **Rodriguez's** residence at around 11:02 a.m.

37. A field test of the substance conducted by FBI Special Agent Tim Smylie indicated a positive presence of methamphetamine. Drug Enforcement Agency (DEA) laboratory report indicated the seized substance was 100% pure methamphetamine weighing 1003.2 grams.

38. On May 17, 2021, CHS met with **Rodriguez** at XXXX Wilbarger Street, Fort Worth, Texas to obtain contact information for **Rodriguez's** source of supply. CHS paid **Rodriguez** $500.00 for phone number XXX-XXX-8356, used by **McGlothlin**.

39. On May 20, 2021, CHS contacted **McGlothlin** via telephone to discuss a potential purchase of methamphetamine. **McGlothlin** advised the CHS he had methamphetamine available: half a kilogram for $3,800.00 and one kilogram for $7,200.00.

40. On May 26, 2021, FBI SA Pance Kecev and other FBI SA'S attempted to purchase half a kilogram of methamphetamine from **McGlothlin.** CHS contacted **McGlothlin** and agreed -to meet at Central Market, located at 4651 West Freeway, Fort Worth, Texas. At around 2:00 p.m., **McGlothlin**, operating a purple Ford LTD 2, bearing Texas license plates B12150M arrive at Central Market and meet with CHS, in CHS's vehicle. **McGlothlin** did not have the methamphetamine with him but said he had the product available at his nearby apartment. **McGlothlin** stated he did not carry the Ice with him because he did not want to go back to jail. **McGlothlin** told CHS that someone else will deliver the Ice.

41. At 2:39 p.m., **McGlothlin** called CHS and provided a phone number: XXX-XXX-3999, believed to be used by Eanes who was going to deliver the methamphetamine.

42. A subsequent Administrative Subpoena result for cell phone number XXX-XX-3999 revealed the phone was subscribed to an "Aaron Wright", address 6403 Espana Drive, Fort Worth, Texas. Further research of the address showed **Joseph Eanes** and Aaron Light lived at the same address and used the same social security number, xxx-xx-4200. There is no evidence that Aaron Light or Aaron Wright are actual persons living at 6403 Espana Drive. Your affiant is aware that drug dealers may use fictitious names when acquiring a cellular telephone to hide their identities from prospective law enforcement action.

Subsequently, Agents got the Texas Driver's License photograph of **Joseph Eanes** and showed it to the CHS as documented below.

43. At 2:45 p.m., CHS contacted **Joseph Eanes. Eanes** instructed CHS to drive to Steak-'n Shake restaurant, located a 5020 Overton Ridge Boulevard, Fort Worth, Texas. A silver, four door Lexus sedan, bearing Texas partial license plate 1438, arrived at Steak 'n Shake. The vehicle was occupied by two unidentified males. **Eanes** exited the Lexus sedan and entered the CHS's vehicle. **Eanes** gave the CHS approximately half a kilogram of white crystalline substance believed to be Methamphetamine. The substance later tested as an analogue substance, negative for the presence of methamphetamine. Drug Enforcement Agency (DEA) laboratory report indicated the seized substance was dimethyl sulfone weighing 214.4 grams. Dimethyl sulfone is a common cutting agent used to dilute methamphetamine.

44. CHS attempted to contact **McGlothin** to discuss and remedy the bad drug deal. **McGlothlin** shifted the blame to **Eanes** and did not take responsibility as the facilitator of the controlled buy.

45. During the debrief of the CHS on June 7, 2021, he was provided with a photo of **Eanes**. CHS positively identified **Eanes** as the supplier of the dimethyl sulfone purported to be methamphetamine on the May 26, 2021 controlled purchase.

46. Toll analysis of **McGlothlin's** cell phone number XXX-XX-8356 between May 25, 2021 and June 22, 2021 revealed a total of 219 telephonic contacts between **McGlothlin** and **Eanes**. On May 25, 2021, one day prior to the controlled purchase, there were ten (10) telephonic contacts between **McGlothlin** and **Eanes**.

On May 26, 2021, the day of the scheduled controlled purchase of methamphetamine, there were a total of seventy-two (72) telephonic contacts between **McGlothlin** and **Eanes**.

## IV  CONCLUSION

47. Although your AFFIANT has not listed all the facts regarding the investigation into **Rene Rodriguez, Alvin Taylor, William McGlothlin,** and **Joseph Eanes**, your AFFIANT believes the facts stated here establish probable cause that **Rene Rodriguez, Alvin Taylor, William McGlothlin,** and **Joseph Eanes** did knowingly and intentionally combine, conspire, confederate, and agree to engage in conduct in violation of 21 U.S.C. § 846 (21 U.S.C. §§ 841(a)(1) and (b)(1)(A)), namely to conspire to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

_____
Special Agent Pance Kecev
Federal Bureau of Investigation

Sworn AND Subscribed before me on this **2ND** day of December 2021, at **1:37** am/pm, in Fort Worth, Texas.

_____
HAL R. RAY, JR.
United States Magistrate Judge